UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KENNETH COLVIN, JR.,

                Plaintiff,

v.

CONNIE HORTON et al.,

                Defendants.

_____/

Case No. 2:19-cv-122

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF)

in Kincheloe, Chippewa County, Michigan, and the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues MDOC Special Activities Coordinator Steven Adamson and former Special Activities Coordinator David M. Leach, together with the following current or former URF Officials: Former Warden Jeffrey Woods; Former Deputy Warden Connie Horton; and Chaplain Dave Rink. He also sues MCF Chaplain K. Pelky and MCF Deputy Warden D.M. Steward.

Plaintiff's complaint covers several distinct issues and events.[1] Plaintiff first alleges that, on October 4, 2016, he transferred to URF from the Oaks Correctional Facility. Upon arrival, Plaintiff sent letters to Defendants Woods and Rink, asking to be placed on the list for a religious diet and attaching documentation showing that he had been approved to receive kosher meals since 2012. Defendants Woods and Rink, however, took no action in response to his letters. Plaintiff was not placed on the religious-diet list.

On October 22, 2016, Plaintiff filed a Step-I grievance, complaining that he was being denied his religious diet. (Attach. to Compl., ECF No. 1-1, PageID.18.) He indicated in the grievance that he had sent Defendant Rink several kites about the matter, without response. No action was taken on the Step-I grievance. Receiving no response, Plaintiff filed a Step-II grievance on December 1, 2016. Defendant Woods responded to the grievance on December 10, 2016, noting that the Step-I grievance response was untimely and concluding that Plaintiff had been approved for the diet but had not been placed in the callout system upon his transfer. Defendant

---

[1] The Court notes that some of Plaintiff's claims against some of the Defendants (i.e., Plaintiff's claims against Defendants Adamson, Pelky, and Steward) are not properly joined in this action. *See* Fed. R. Civ. P. 20(a) (limiting the joinder of parties in single lawsuit) and Fed. R. Civ. P 18(a) (limiting the joinder of claims). However, because Plaintiff's allegations fail to state a claim, the Court will not address whether the misjoined claims and Defendants should be severed or dismissed without prejudice under Fed. R. Civ. P. 21.

Woods indicated that Plaintiff would immediately be placed on the list for religious meals as of December 10, 2016. (*Id.*, PageID.19-20.)

Plaintiff alleges that, prior to the Step-II response, he was interviewed by Defendant Rink on December 9, 2016. At that time, Defendant Rink admitted that he had received the Step-I grievance, but he had misplaced it somewhere. Defendant Rink advised Plaintiff that he would be placed on the religious-diet list the next day. Plaintiff began receiving his religious diet, as promised, on December 10, 2016.

Plaintiff complains that the deprivation of his religious diet for two months violated his rights under the First Amendment's Free Exercise Clause and under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).

Plaintiff next complains about alleged religious violations that occurred in January 2018. Plaintiff alleges that he became aware of a "Jewish Program" at the Macomb Correctional Facility (MRF), which purportedly is sponsored by the Aleph Institute. (Compl., ECF No. 1, PageID.5.) According to Plaintiff, the sponsored program included religious services led by a rabbi and the provision of a kosher diet that was not the vegan diet provided to all prisoners receiving a religious diet at URF. Plaintiff attaches the affidavits of three prisoners who had been at MRF and claimed knowledge of the program. (*See* Attach. to Compl., ECF No. 1-1, PageID.25-27.)

Plaintiff requested a transfer to MRF, so that he could participate in the Jewish Program, by writing to the unspecified Special Activities Coordinator and Chaplain Rink. Plaintiff was denied a transfer. On January 22, 2018, Plaintiff wrote a Step-I grievance, alleging that he was fully qualified to participate in the program and that his religious needs would be better fulfilled in the program. He contended that, in denying him a transfer, Defendants were violating

his rights under the First and Fourteenth Amendments by preventing him from freely practicing his religion and subjecting him to discrimination.  (Attach. to Compl., ECF No. 22, PageID.21.)

On January 31, 2018, Defendant Rink interviewed Plaintiff on the grievance. Plaintiff alleges that Defendant Rink implicitly acknowledged the existence of a Jewish Program at MRF, but informed Plaintiff that unknown staff had told Rink that Plaintiff would not be transferred to MRF.  Defendant Rink advised Plaintiff that he supported the decision denying Plaintiff's request to transfer, because "the MDOC [wa]s tired of [Plaintiff] and his continuous litigating . . . ."  (Compl., ECF No. 1, PageID.5.)  In the grievance response issued that same day, Defendant Rink indicated that transfer was not required by the law, because Plaintiff received religious accommodations at URF that allowed him to practice his faith, including the space and time for a Jewish service, adequate religious library callouts and reading material, and a religious diet.  Rink stated that neither the constitution nor prison policy guaranteed Plaintiff a right to transfer to a facility that had a special Jewish program.  (Attach. to Compl., ECF No. 1-1, PageID.22.)

Plaintiff appealed the grievance denial to Step II.  (*Id.*, PageID.24.)  Defendant Horton responded to his grievance on February 16, 2018, finding the Step-I response to be appropriate and supported by policy.  Defendant Horton concluded that Defendant Rink had properly found under applicable policy that URF was providing Plaintiff the necessary elements for his Jewish service.  (*Id.*, PageID.23.)  Horton's response implied that a special Jewish Program existed at MRF.

Plaintiff appealed to Step III.  Defendant Leach responded that the religious meal program at MRF was no different than the one provided at URF.  (Compl., ECF No. 1, PageID.6.) Plaintiff contends that Defendant Leach's response was inaccurate in representing that the program

was the same.  In addition, he contends that, while URF permits him to attend a scheduled religious service, he does not have a consistent opportunity to participate in group religious services, because so few prisoners attend the scheduled time for services.

On December 17, 2018, Plaintiff wrote Defendant Adamson, again asking to be transferred to MRF to participate in the Jewish Program.  Adamson did not respond.  Plaintiff filed a grievance on January 21, 2019, complaining that Defendants Adamson and Rink had failed to respond to his request to be transferred.  Defendant Rink denied the grievance at Step I on May 28, 2019.

In the interim, on February 14, 2019, Plaintiff wrote to Defendant Pelky at MCF, again asking to be transferred to MRF.[2]  Defendant Pelky denied Plaintiff's response and allegedly included false statements in his response to Plaintiff's grievance.  Plaintiff apparently appealed his grievance through Step III.  The Step-III grievance was denied on April 23, 2019.

Plaintiff asserts that, by denying his transfer to MRF, Defendants violated his rights to equal protection and to freely exercise his religion, in violation of the First and Fourteenth Amendments and the RLUIPA.  He also contends that that Defendants denied him the right to transfer in retaliation for the exercise of his right to petition government by filing grievances and civil rights complaints.

In his final set of allegations, Plaintiff asserts that, on March 3, 2019, and again on March 5, 2019, he mailed requests to be placed on the list for participation in the Fast of Esther. On March 7, Defendant Chaplain Pelky responded, stating the following:

> I received two kites from you requesting that you be added to the list for a meal bag during the Fast of Esther on 3/20/2019.  I received both of these kites on 3/7/2019; However, the deadline for submitting your name to central office was 3/5/2019.  It is consequently not possible for me to add your name to this list.

---

[2] It appears that Plaintiff was transferred to MCF sometime between January 21, 2019, and February 14, 2019.

(Compl., ECF No. 1, PageID.8.)  Plaintiff complains that the kites were submitted in a timely manner, but, because Defendant Pelky did not work Monday through Wednesday, he did not see the kites until after the deadline.

On March 14, 2019, Plaintiff spoke with Defendant Deputy Warden Steward about Defendant Pelky's refusal to place him on the list for participation in the fast.  Plaintiff argued that Defendant Pelky had failed to post the deadline for participating in the fast.  Defendant Steward responded that the prison had no intention of posting anything and that Plaintiff should be aware of his own upcoming religious holy days.  Plaintiff also insisted that there was no valid reason for the deadline, as the food items involved—bread, fruit, peanut butter and jelly, cold cereal, and milk—were always in the kitchen.  When Plaintiff told Steward that he was writing a grievance, Steward allegedly became angry and threatened to have Plaintiff transferred.

Plaintiff contends that the failure to provide him a meal bag on the Fast of Esther violated his religious rights under the First Amendment and RLUIPA.  He also argues that Defendants Pelky and Steward violated prison policy when they failed to post the deadline for receiving a meal bag for the Fast of Esther.

On April 30, 2019, four days after Plaintiff's civil trial in *Colvin v. Morefield*, No. 1:15-cv-70, Plaintiff was transferred to LMF.  Plaintiff claims that the transfer was ordered in retaliation for Plaintiff's grievances and complaints, in violation of the First Amendment.

Plaintiff seeks substantial compensatory and punitive damages, together with an injunction directing that he be transferred to MRF.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    2016 Denial of Religious Diet

In his first set of allegations, Plaintiff contends that he was denied his religious diet for two months by the actions and inactions of Defendants Woods, Rink, Horton, and Leach. Specifically, he alleges that he wrote to both Defendants Woods and Rink when he arrived at URF, notifying them of his approval for the religious diet, but they failed to ensure that he was placed on the religious-diet list.  In addition, he argues that Defendant Rink neglected to respond to his Step-I grievance promptly.  Plaintiff was not interviewed by Rink until Plaintiff filed a Step-II grievance with Defendant Woods.  At that point, he alleges, Defendant Rink told him that he had misplaced the Step-I grievance, and Rink immediately authorized Plaintiff's placement on the list. Woods acknowledged that the Step-II grievance had not been responded to in a timely fashion, but he found that the matter was now resolved because Plaintiff had been placed on the list.  Plaintiff appealed his grievance to Step-III, which was denied by Defendant Leach.  Plaintiff argues that the deprivation of his religious meals for two months violated his rights under the Free Exercise Clause of the First Amendment and RLUIPA.  He also alleges that the failure to place him on the religious-diet list violated his right to equal protection.  Finally, he alleges that Defendant Horton, as then-Deputy Warden, should have known that Plaintiff was to be placed on the religious-diet list, as she had printed a history of Plaintiff's religious-menu approval, showing that Plaintiff was approved for the religious diet in 2012.  (Compl., ECF No. 1, PageID.4; Attach. to Compl., ECF No. 101, PageID.14.)

### 1.  Free Exercise Clause

Plaintiff's allegations against Defendants Rink, Woods, Horton, and Leach sound in negligence.  It is well established that negligent conduct will not state a constitutional claim under § 1983.  *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that the protections of the Due Process Clause of the constitution are not "triggered by a lack of due care by prison

officials.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner . . . ."), and *Baker v. McCollum*, 443 U.S. 137, 1464 (1979) (holding that false imprisonment does not violate the Fourteenth Amendment simply because the defendant is a state official). Numerous courts have recognized that a prison official's negligent interference with a prisoner's religious diet does not violate the constitution. *See Colvin v. Caruso,* 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated incidents of negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330). Because "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause," *Lovelace*, 472 F.3d at 201, Plaintiff fails to state a free exercise claim against Defendants Rink, Woods, and Leach arising out of the 2016 failure to provide Plaintiff with religious meals.

Plaintiff's free exercise claim against Defendants Woods, Leach, and Horton fails for an additional reason. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*,

310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Woods, Horton, and Leach engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them for this additional reason.

## 2. RLUIPA

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

Plaintiff's RLUIPA claims against Defendants Woods, Rink, Horton, and Leach fail for several reasons. First, the RLUIPA does not authorize damages actions against state actors in their individual capacities. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019); *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014); *see also Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013); *Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012); *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012); *Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 186-89 (4th Cir. 2009); *Sossamon v. Texas*, 560 F.3d 316, 327-

29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1274 (11th Cir. 2007). As a result, to the extent that Plaintiff seeks damages from Defendants in their individual capacities, he fails to state a claim.

Second, to the extent that Plaintiff seeks damages from Defendants in their official capacities, he is barred by the doctrine of sovereign immunity. *See Cardinal v. Metrish*, 564 F.3d 794, 798-801 (6th Cir. 2009) (holding that Congress did not clearly demonstrate an intent to waive states' Eleventh Amendment immunity from monetary damages).

Third, Plaintiff neither seeks nor is entitled to injunctive relief under RLUIPA for the two-month denial of his prison meals in 2016. As Plaintif expressly acknowledges, he began receiving religious meals in December 2016 and is not suffering any ongoing interference with those meals from Defendants' 2016 conduct. Moreover, Plaintiff has since been transferred from URF to MCF to LMF. Any request for injunctive relief was mooted by his transfers. *See Cardinal*, 564 F.3d at 798-99 (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)).

Fourth, the undersigned previously has held that, applying ordinary tort principles, and in the absence of a state-of-mind standard under the statute itself, liability under the RLUIPA is limited to intentional conduct. *Garrison v. Dutcher*, No. 1:07-cv-642, 2008 WL 4534098, at *6 (W.D. Mich. Sept. 30, 2008) (concluding that the RLUIPA requires a state of mind higher than negligence) (citing *Lovelace*, 472 F.3d at 194). Other courts have agreed. *See Fisherman v. Schaefer*, No. 17-cv-3766, 2019 WL 1086390, at *4 (D. Minn. Jan. 17, 2019) (holding that negligent conduct is not actionable under RLUIPA); *Guillory v. Ellis*, No. 9:11-cv-600, 2014 WL 4365274, at *9 n.10 (N.D.N.Y. Aug. 29, 2014) (same); *Nelson v. Jackson*, No. 2:12-cv1167, 2014 WL 197877, at *13 (S.D. Ohio Jan. 15, 2014) (same); *Carter v. Washington Dep't of Corr.*, No. C11-5626, 2013 WL 1090753, at *14 (W.D. Wash. Feb. 27, 2013) (same). For the reasons set

forth in *Garrison*, 2008 WL 4534098, at *6, the Court holds that, to be actionable under RLUIPA, a defendant must engage in conduct with a mens rea higher than negligence.

In the instant case, Plaintiff alleges nothing more than simple negligence by Woods and Rink in neglecting to respond to his letter and by Rink in misplacing the Step-I grievance. Although the result of the negligence caused Plaintiff to miss his religious meals for two months, Plaintiff makes no allegation that the deprivation was intentional. As a consequence, for this reason as well, Plaintiff fails to state a RLUIPA claim against any Defendant based on the 2016 incidents.

### 3. Equal Protection

Plaintiff makes a conclusory allegation that Defendants violated the Equal Protection Clause. Plaintiff's claim appears to rest on a conclusion that, because he was not provided with religious meals while other inmates were allowed religious meals, Plaintiff was denied equal protection of the laws.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Plaintiff's equal protection claim fails for the same reason as his free exercise and RLUIPA claims. To establish a violation of the Equal Protection Clause, an inmate must show

that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Plaintiff fails to allege that any Defendant acted purposefully. As previously discussed, Plaintiff alleges nothing more than that Defendants were negligent. As a result, Plaintiff fails to state an equal protection claim based on Defendants failure to place him on the religious-diet list in 2016.

### B. Denials of Transfer to "Jewish Program" at MRF

Plaintiff complains that, in early 2018, Defendants Leach and Rink failed to notify him of his eligibility for the Jewish Program at MRF and failed to provide timely responses to his request to be transferred to MRF, so that he could participate in that program. He contends that Defendants Rink, Horton, and Leach also are liable, because they denied his grievance about the refusal to transfer him. In addition, Plaintiff contends that he wrote Defendant Special Activities Coordinator Adamson on December 17, 2019, requesting that he be transferred to MRF, but Adamson failed to respond. Plaintiff then wrote a grievance on January 21, 2019, against Adamson and Rink for having denied his transfer. On February 14, 2019, after his transfer to MCF, Plaintiff wrote Defendant Pelky, asking Pelky to transfer him to MCF for the Kosher Program. Pelky refused, and Plaintiff added Pelky to his Step-II grievance appeal. On April 23, 2019, the grievance was denied at Step III.

Plaintiff contends that Defendants Rink, Leach, Horton and Pelky improperly denied his requests to be transferred to the program, in violation of his rights under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. Plaintiff also contends that Defendant Rink denied him the right to transfer in retaliation for Plaintiff having filed grievances and lawsuits. In addition, Plaintiff's allegations suggest he may intend to claim that he was denied his right to petition government and

due process, based on Defendant Adamson's failure to respond to his written request for a transfer and Defendant Leach's inclusion of incorrect statements in his grievance response.

1. Free Exercise Clause

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials"). If the prisoner makes the first showing, the constitutionality of the Defendant's actions depends on whether those actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

14

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Plaintiff's claim fails at the first step: he fails to allege facts showing that Defendants have infringed on his religious practices in any way by housing him at URF or MCF, rather than MRF. Courts have held that § 1983 claims are subject to ordinary tort pleading requirements, including a showing of factual and proximate causation—that the injury would not have occurred but for the defendant's conduct. *Wright v. Lassiter*, 921 F.3d 413, 419 (4th Cir. 2019) (holding that defendants' denial of a Rastafarian prisoner's request for communal feasts on certain holy days did not infringe on plaintiff's sincerely held beliefs or practices, because no other prisoners in his facility or in North Carolina adhered to his sect's belief in the requirement; thus, a communal gathering was impossible) (citing *Bader v. Wrenn*, 675 F.3d 95, 98 (1st Cir. 2012) (holding that the inability to hold religious services because of the lack of outside clergy, volunteer visitors, and practicing co-religionists does not constitute a violation of either the Free Exercise Clause or RLUIPA, because government action has not caused the deprivation), and *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004) (holding that the burden resulted from "a dearth of qualified outside volunteers" to lead religious gatherings, not any prison policy prohibiting the gatherings)). Plaintiff must show that Defendants' policies are the cause of any burden on his exercise of religion. *Wright*, 921 F.3d at 419.

Plaintiff's allegations wholly fail to demonstrate that any action by Defendants affected his ability to practice his religion. Plaintiff does not allege that Defendants have denied a religious diet that meets his religious requirements. While Plaintiff alleges that he would prefer the religious diet that he believes is provided at MRF,[3] he alleges no facts indicating that his

---

[3] The Court notes that, while Plaintiff believes the religious diet provided at MRF is different than that provided at URF and MCF, Mich. Dep't of Corr. Policy Directive 05.03.150 ¶ OO indicates that the religious diets offered at all three institutions are the same: a vegan diet. Nevertheless, the Court takes Plaintiff's allegations on this issue as true, for purposes of this decision.

sincerely held religious beliefs are violated by the vegan diet. In an unpublished opinion, the Sixth Circuit has recognized that offering a vegan diet to prisoners with religious dietary restrictions is a reasonable accommodation and fully complies with the prisoner's religious beliefs, even if it is not his preferred diet. *Salaam v. Corr. Corp. of Am.*, 21 F. App'x 258, 260-61 (6th Cir. 2001) (considering a halal diet and rejecting the proposition that prisons must accommodate all prisoner preferences); *see also Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109, 2019 WL 2076996, at *4 (W.D. Mich. Apr. 8, 2019) (holding that a vegan diet is sufficient to meet kosher diet requirements).

In addition, Plaintiff does not dispute that he is permitted access to the religious library and may personally possess religious writings. Plaintiff also acknowledges that the prisons have provided him a regular opportunity for group religious services. He claims, however, that he sometimes was unable to participate in group services at URF, due to the small number of interested adherents to his faith. However, Plaintiff's inability to participate in a group service due to a lack of adherents does not establish that Defendants themselves caused that deprivation. *See Bader*, 675 F.3d at 98; *Adkins*, 393 F.3d at 571. By his own admissions, Defendants provide an opportunity for group services. Only the lack of attendance by other adherents—a circumstance not controlled by Defendants—prevents those services from taking place. Plaintiff therefore fails to demonstrate that any Defendant infringed on his religious beliefs.

Because Plaintiff does not allege that Defendants interfered with his ability to practice his religion, the Court need not address the second step of the free exercise analysis: whether any infringement was reasonably related to a legitimate penological interest. Plaintiff fails to state a free exercise claim against Defendants Rink, Steward, Leach, Horton, and Pelky for their involvement in the denials of his request to transfer to MRF.

2.  RLUIPA

RLUIPA applies to prisons that receive federal funds and prohibits state and local governments from placing "a substantial burden" on the "religious exercise" of any inmate unless they establish that the burden furthers a "compelling governmental interest" and does so in the "least restrictive" way. 42 U.S.C. § 2000cc-1(a).  To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice. So long as the practice is traceable to a sincerely held religious belief, *see Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), it does not matter whether the inmates' preferred exercise is "central" to his faith, 42 U.S.C. § 2000cc-5(7)(A).  Once an inmate makes this showing, the prison policy survives only if it serves a compelling governmental interest in the least restrictive way.  *Id.* (citing § 2000cc-1(a)); *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

Plaintiff's RLUIPA claim fails for the same reason as his free exercise claim: Plaintiff fails to identify a burden placed on the exercise of his religion by Defendant government officials.  Instead, he simply argues that he would experience a higher level of religious satisfaction if he were transferred to MRF.

As the First Circuit has held,

> [D]espite RLUIPA's highly general language ("[n]o government shall impose a substantial burden . . .") and the admonition to read it broadly, 42 U.S.C. § 2000cc-3(g), it has to be glossed to provide some focus for determining just how far the responsibility of the "government" extends.  Nothing in the mischiefs that led to its enactment suggests that it was meant to govern the siting of prisons, general policies of assigning prisoners or determining transfers, or the failure to assign prisoners by religion.

*Bader*, 675 F.3d at 99 (1st Cir. 2012).  The *Bader* court found that the fact that no outside clergy or volunteer could be found to lead the plaintiff's religious services at his current prison was not a burden, substantial or otherwise, that was imposed by the prison.  Similarly, in *Wright*, the Fourth Circuit repeated that claims under both § 1983 and RLUIPA require a causation element.  *Wright*,

921 F.3d at 419. Indeed, the RLUIPA, by its terms, requires that the "government" not only "impose" a burden, but "impose a substantial burden." *Id.*

Because Plaintiff fails to allege that Defendants at URF or MCF substantially burdened his religious exercise, his RLUIPA claim fails at the first step. The Court therefore need not determine whether the policy serves a compelling state interest. Plaintiff's RLUIPA claim against Defendants therefore will be denied.

### 3. Equal Protection Clause

Plaintiff's equal protection claim is largely conclusory. He appears to suggest that Jewish prisoners who happen to be housed at MRF may receive additional religious opportunities not offered to Plaintiff at either URF or MCF.

As the Court earlier discussed, in order to demonstrate an equal protection violation, a plaintiff must allege facts demonstrating that he was purposefully treated differently than other individuals who were similarly situated. *City of Cleburne*, 473 U.S. at 439. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff's equal protection claim concerning his transfer to MRF is not based on an allegation that he was treated differently than other similarly situated prisoners on the basis of his fundamental right to freely exercise his religion. Instead, he argues that Jewish prisoners at a different MDOC facility may have had some additional privileges that Plaintiff did not receive at URF and MCF. Plaintiff also does not allege that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed

under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).

"Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff utterly fails to allege that any similarly situated prisoner was treated differently than he was or was afforded favorable treatment when he was not. *See id.*; *City of Cleburne*, 473 U.S. at 439; *Reed v. Reed*, 404 U.S. 71, 76 (1971). According to Plaintiff's allegations, it appears that some Jewish prisoners are housed at MRF. However, Plaintiff's allegations also demonstrate that MRF also houses prisoners who are not Jewish. And Plaintiff does not dispute that numerous Jewish prisoners are housed at other facilities within the MDOC. Plaintiff therefore does not suggest that he was singled out for a placement different from those offered to other adherents to the Jewish faith. In addition, Plaintiff identifies no prisoner who was treated more favorably by being transferred to MRF based on his request to participate in the Jewish program. Plaintiff therefore fails to establish that he was treated differently than any similarly situated Jewish prisoner. His equal protection claim thus fails under the rational-basis test.

Moreover, even if Plaintiff intended to allege that other, non-Jewish prisoners' requests for transfer to MRF were treated more favorably (an allegation not contained in the complaint), which would entitle Plaintiff to strict scrutiny of the denial of transfer, Plaintiff utterly fails to allege facts supporting that conclusory notion. As a result, even applying strict scrutiny, Plaintiff's allegations fall short of the pleading requirements. *See Iqbal*, 556 U.S. at 678 (holding that conclusory statements do not suffice to state a claim).

For these same reasons, Plaintiff fails to state a RLUIPA claim for prospective injunctive relief[4] against Defendants Rink, Steward, Leach, Horton, and Pelky, arising out of their alleged failures to grant his request to transfer to MRF.

### 4. Due Process

Although Plaintiff does not expressly raise a due process claim, his allegations arguably require consideration of such a claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Plaintiff has no liberty interest in being transferred to a different facility. The courts long have recognized that inmates have no constitutional right to placement in a particular prison facility. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995) (inmate has no constitutional right to be transferred from one institution to another). In addition, the courts have recognized that the ability

---

[4] As previously discussed, RLUIPA does not provide damages against Defendants acting in their official capacities, *See Cardinal*, 564 F.3d at 798-801, and does not provide a cause of action against Defendants in their individual capacities, *Cavin* 927 F.3d at 460.

to transfer prisoners is essential to prison management and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Meachum*, 427 F.3d at 228-29; *Olim*, 461 U.S. at 238; *Montanye v. Haynes*, 427 U.S. 236 (1976).

Because Plaintiff has no liberty interest in being placed at his preferred prison, his due process claim fails.

### 5. Right to Petition Government

Plaintiff claims that, by not responding to Plaintiff's request to transfer Plaintiff to MRF, Defendant Adamson violated his right to petition government. He also suggests that Defendants Rink, Horton, Leach, Pelky, and Adamson violated his First Amendment right to petition government by failing to resolve his grievances in a favorable manner.

Petitioner's right to petition government is not violated by Defendants' failure to process or act on his grievances. The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Plaintiff was not prevented from petitioning any Defendant; he merely did not receive the responses he wanted. Such allegations fail to state a First Amendment claim under the petition clause. *Id.* As a consequence, Plaintiff fails to state a right-to-petition claim against Defendants Rink, Horton, Leach, Pelky, and Adamson.

### 6. Retaliation

Plaintiff alleges that, on January 31, 2018, while interviewing Plaintiff about his grievance complaining about not being transferred, Defendant Rink indicated that he had been told by an unknown official that Plaintiff's request to be transferred to MRF was not going to be granted. Defendant Rink also told Plaintiff that Rink supported the decision, bringing up

Plaintiff's earlier grievance against Rink and indicating that the "MDOC is tired of [Plaintiff] and [his] continuous litigating." (Compl., ECF No. 1, PageID.5.) After the interview, Defendant Rink denied the grievance at Step I. Subsequently, Defendant Horton denied the grievance at Step II, and Defendant Leach denied the grievance at Step III. Plaintiff alleges that Defendants' decisions to deny him a transfer to MRF and to deny his grievance were taken in retaliation for the filing of his many grievances and civil rights complaints.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that he engaged in protected conduct by filing grievances and lawsuits. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037 (holding that filing a frivolous grievance is not protected conduct); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court will assume for purposes of this opinion that Plaintiff satisfies the first prong of his retaliation claim.

Plaintiff's retaliation claim fails at the second step, however, because his allegations do not demonstrate that Defendants Rink, Horton, and Leach engaged in active conduct that

amounted to adverse action. Plaintiff does not allege that any of the three Defendants made the decision to deny his request for transfer. Instead, Plaintiff alleges only that Defendants Rink, Horton, and Leach denied his grievances. As the Court previously discussed, § 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Numerous courts have held that the denial or refusal to process a grievance is not adverse action. *See Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *4 (W.D. Mich. May 6, 2015) (holding that the rejection of a grievance is not adverse action); *Ross v. Westchester Cty. Jail*, No. 10 Civ. 3937(DL C), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a single grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim), *aff'd*, 358 F. App'x 302 (3d Cir. 2009). By denying Plaintiff's grievances, Defendants Rink, Horton, and Leach took no adverse action.

Moreover, even if Plaintiff could demonstrate that he suffered adverse action, Plaintiff's retaliation claim against Defendants Horton and Leach fails for an additional reason. Although Defendant Rink's comment about MDOC officials being tired of Plaintiff's complaints

and lawsuits may demonstrate some improper motivation in Rink's own decision to deny the grievance, Plaintiff has alleged no fact to suggest that Defendants Horton and Leach had the same motivation. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in relation to Defendants Horton and Leach. He has not presented any fact to support his conclusion that Defendants retaliated against him because he filed a grievance against some other officer or that they possessed the same motive as Defendant Rink. Accordingly, his speculative allegation fails to state a claim.

For all of these reasons, Plaintiff fails to state a retaliation claim against Defendants Rink, Horton, and Leach.

## C. Failure to Accommodate Fast of Esther

Plaintiff alleges that, on March 3, 2019, he mailed a kite to Defendant Pelky, asking to be placed on the list to receive a meal bag during the Fast of Esther on March 20, 2018. Plaintiff sent another request on March 5, 2018. Because Defendant Pelky did not work on Mondays

through Wednesdays, Pelky received both kites on March 7, 2019. Defendant Pelky responded to Plaintiff's kites, informing Plaintiff that the deadline to submit names to the central office was March 5, 2019, and that Pelky therefore was unable to add Plaintiff to the list. On March 14, 2019, Plaintiff spoke with Defendant Deputy Warden Steward about Defendant Pelky's response. Plaintiff stated that Defendant Pelky had failed to post the deadline for participation and that Plaintiff therefore was entitled to accommodation. Steward responded that Plaintiff should be aware of his own fast days well in advance and indicated that the prison had no intent to post announcements. Plaintiff told Steward that MDOC Policy Directive 05.03.150 ¶ Q mandated that staff inform prisoners of deadlines for participating in religious activities. Defendant Steward refused to change Pelky's decision to deny the meal bag. Plaintiff asserts that prison officials would have had no difficulty providing the food bag, as all of the food items—bread, fruit, peanut butter, cold cereal, and milk—were always available in the kitchen. Plaintiff advised Steward that he intended to file a grievance. Steward responded angrily and threatened to have Plaintiff transferred. On April 30, five days after judgment was entered for defendants in *Colvin v. Morefield et al.*, No. 1:15-cv-70 (W.D. Mich. Apr. 24, 2019), Plaintiff was transferred to LRF, which is located in the Upper Peninsula of Michigan.

### 1. First Amendment & RLUIPA

Plaintiff claims that, by denying him a meal bag on March 20, 2019, Defendants Pelky and Steward violated his right to freely exercise his religion. While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone*, 482 U.S. at 348, subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner*, 482 U.S. at 89 (First Amendment protection extends to all religious beliefs, and

guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith . . . ."); *see also County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989). To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989).

   Likewise, RLUIPA provides in pertinent part that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA's institutionalized-persons provision alleviates government-created burdens on private religious exercise. *Cutter*, 544 U.S. at 720. Although RLUIPA does not define "substantial burden," courts apply the traditional substantial burden test, as defined by the Supreme Court's free exercise jurisprudence. *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004) (citations omitted). A "substantial burden" requires something more than an incidental effect on religious exercise. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988) (a substantial burden has "a tendency to coerce individuals into acting contrary to their religious beliefs"); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 141 (1987) (there is a substantial burden where a regulation puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs"); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226-27 (11th Cir. 2004) (a substantial burden must place more than an inconvenience on religious exercise); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (substantial burden is "one that

necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable").

Plaintiff claims only that he was not allowed to receive a food bag on one day. Because he was fasting, the denial of the food bag resulted in his missing one meal after the fast. At most, Plaintiff alleges that, in order to adhere to his religious fast, he was required to fast for a few hours longer.

A single instance of failing to place Plaintiff on a list for a food bag does not amount to a violation of either the First Amendment or the RLUIPA. *See Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated instances of errors in the provision of a kosher meal do not state a claim under the First Amendment or the RLUIPA); *see also Johnson v. Wilkinson*, 229 F.3d 1152, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (unpublished table decision) (holding that a prisoner's allegations about "random and isolated interference with [his] mail" did not rise to the level of a First Amendment violation). Plaintiff therefore fails to state either a free exercise or RLUIPA claim against Defendants Pelky and Steward.

## 2. Violation of MDOC policy

Plaintiff alleges that Defendants Steward and Pelky violated prison policy, MDOC Policy Directive 05.03.150 ¶ Q, when they failed to post the deadline for making a request for a food bag on the Fast of Esther.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendants' alleged failure to comply with a state administrative rule or policy does not itself rise

to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Plaintiff therefore fails to state a claim based on an alleged violation of MDOC policy.

### D.        Retaliatory Transfer

Plaintiff alleges that Defendant Steward retaliated against him for complaining about not being placed on the list for a meal bag and threatening to file a grievance. Plaintiff contends that Steward threatened to have him transferred for raising his complaints, and Plaintiff ultimately was transferred six weeks later, after his civil rights trial in this Court's Grand Rapids courthouse concluded.

As the Court earlier discussed, in order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X*, 175 F.3d at 394.

The Court assumes for purposes of this opinion that Plaintiff was engaged in protected conduct when he complained to Steward about Pelky's refusal to add Plaintiff to the list of prisoners to receive a meal bag on the Fast of Esther on March 20, 2019. *See Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (recognizing that nonfrivolous complaints, whether written or verbal, are protected conduct).

Plaintiff's retaliation claim, however, fails at the second step. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Hill*, 630 F.3d at 474 (holding that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Plaintiff was transferred from level-II housing at one facility to level-II housing at another facility. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of

the transfer.  Because Plaintiff alleges no aggravating factor beyond simple transfer, his transfer does not rise to the level of adverse action.

Even if Plaintiff could make a showing of adverse action, his conclusory allegations would fail at the third step of the analysis, because Plaintiff fails to allege facts showing that his transfer was motivated by his protected conduct.  Steward's threat to transfer Plaintiff occurred six weeks before Plaintiff was transferred, and Plaintiff alleges no additional problems with Steward during the interim.  Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  Here, the passage of six weeks between the threat and the transfer provides only a weak connection between any retaliatory motive and the timing.

In addition, Plaintiff fails even to allege that Steward initiated the transfer.  A defendant's statements or conduct are not evidence of retaliation if the defendant is not the decisionmaker taking the alleged adverse action.  *Smith*, 250 F.3d at 1038; *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999).

Moreover, substantial evidence exists in the complaint and in the public record that Plaintiff's transfers from URF to MCF and then to LMF were related not to his protected conduct, but to his need to be housed near Grand Rapids in order to secure his presence at a trial being held there.  Plaintiff acknowledges in his complaint that he was only transferred from one prison (URF) located in the Upper Peninsula of Michigan to a prison (MCF) near Grand Rapids sometime between January 31 and February 14, 2019, shortly after the Court issued its January 16, 2019,

order for writ of habeas corpus ad testificandum, which directed the MDOC to produce Plaintiff for his scheduled jury trial in Case No. 1:15-cv-70, beginning on April 22, 2019. (*See* 1:15-cv-70, ECF No. 197, PageID.1532.) The jury trial ended on April 25, 2019. Plaintiff was transferred back to a different prison in the Upper Peninsula (LMF) on April 30, 2019, five days after the trial ended and judgment was entered in favor of the defendants. (*See* 1:15-cv-70, ECF No. 249, PageID.3354.)

Thus, Plaintiff's allegations about the motivation for his transfer to LMF are incredibly thin, resting solely on a stale threat, especially when considered alongside substantial evidence supporting a nondiscriminatory reason for the transfer. As previously discussed, while the pleading of Fed. R. Civ. P. 8(a)(2) is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff's allegations about the motivation for his transfer raise nothing more than a sheer possibility of unlawful action.

Both because he fails to allege facts demonstrating that he suffered adverse action and because he fails to allege facts supporting a plausible inference of retaliatory motive, Plaintiff's retaliation claim against Defendant Steward fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court declines to certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated: August 20, 2019                    /s/ Gordon J. Quist
                                         _____
                                         GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE